WILSON REALTY COMPANY, INC., v. THE CITY AND COUNTY PLANNING BOARD FOR THE CITY OF WINSTON-SALEM AND FORSYTH COUNTY; B. CLYDE SHORE; J. ERNEST YARBROUGH; R. N. MARSHALL; MARSHALL C. KURFEES; EARL J. SLICK; M. A. HESTER; KENNETH E. GREENFIELD; W. B. SIMPSON; CHARLES E. NORFLEET.

(Filed 21 March, 1956.)

**1. Appeal and Error § 1—**

Whether an act under which an administrative board was created sufficiently prescribes the standards to guide such agency, whether the agency exceeded its authority in adopting rules for its guidance, and whether the act exceeded constitutional limitations in prescribing penalties for failing to comply with the agency's rulings, will not be considered on appeal when

these questions are not raised by the pleadings nor ruled upon by the lower court.

## 2. Mandamus § 1—

The function of *mandamus* is to compel inferior tribunals, officers, or administrative boards to perform duties imposed upon them by law, which writ is issued in the exercise of the court's original, as distinguished from appellate, jurisdiction, and the writ may not be used to serve the purpose of a writ of error or appeal, or to correct action, however erroneous it may have been.

## 3. Appeal and Error § 13a—

The function of *certiorari*, as an independent remedy, is to review judicial or *quasi* judicial proceedings of inferior boards or tribunals.

## 4. Same—

In *certiorari*, evidence *dehors* the record is not permitted in the absence of statutory authority.

## 5. Same—

*Certiorari* may be used as an ancillary writ in a *mandamus* action for the purpose of bringing up from the inferior tribunal or board records deemed necessary for use in the trial of the case on its merits.

## 6. Mandamus § 1—

In *mandamus* proceedings, the general rules governing trials of actions at law and suits in equity control, in so far as applicable, in respect to the right (1) to a hearing, (2) to present evidence, and (3) to object to rulings on questions of reception and exclusion of evidence.

## 7. Mandamus § 4—

Where the pleadings in an action for *mandamus* raise an issue of fact, either party is entitled to a jury trial, G.S. 1-513, but if neither party moves for jury trial, it then becomes incumbent upon the trial judge to find the facts and enter judgment thereon.

## 8. Same: Administrative Law § 4—

Where, in an action for *mandamus*, the court considers records and documents which were neither offered in evidence nor brought up by the writ of *certiorari* to defendant board, under the misapprehension that the court was reviewing the correctness of the order of the administrative board, the cause must be remanded.

## 9. Appeal and Error § 50—

When it appears that the case was heard in the lower court under a misapprehension of the pertinent principles of law, the cause ordinarily will be remanded for another hearing.

PARKER, J., dissents.

APPEAL by petitioner from *Johnston, J.*, 19 September Term, 1955, of FORSYTH.

This appeal is by the petitioner from a judgment denying relief in a *mandamus* action brought to compel the City and County Planning Board for the City of Winston-Salem and Forsyth County to approve a proposed subdivision plat.

The respondent City and County Planning Board was established by joint action of the Board of Aldermen of the City of Winston-Salem and the Board of Commissioners of Forsyth County, pursuant to Chapter 677, Session Laws of 1947. The respondent Henry C. Moore is the Director of Planning of the Planning Board. The other respondents are members of the Board.

The petitioner owns a 70-acre tract of land contiguous to, but just outside, the western limits of the City of Winston-Salem. It is bounded on the east by Silas Creek. The petitioner for some time has been desirous of subdividing the land into streets and lots for sale as high class residential property.

The enabling act under which the respondent City and County Planning Board was established provides that no subdivision plat of land located within three miles of the corporate limits of Winston-Salem may be accepted for filing in the Public Registry of Forsyth County unless and until it be first approved by the Planning Board.

By preliminary conference between Burke E. Wilson, President of the petitioner corporation, and Henry C. Moore, Director of Planning, Mr. Moore insisted that the land be subdivided in such manner as to reserve through it a right of way for a proposed belt line thoroughfare around the western outskirts of the City of Winston-Salem to run northwardly from Hawthorne Road Extension and connect with the main entrance to the new location of Wake Forest College, on Reynolda Road. It is contemplated by the Planning Board that the thoroughfare shall be constructed as a divided 4-lane highway, to be known as Silas Creek Parkway, and located so as to be split by Silas Creek, with two traffic lanes on each side of the creek. A plat was prepared showing subdivision of the 70-acre tract into streets and lots in accordance with specifications which conformed to the requirements as outlined by Mr. Moore. This plat is dated 10 March, 1955. It will be referred to hereinafter as the March 10 plat. It shows a right of way reservation through the property for the proposed parkway. The reservation as indicated on the plat follows the meanders of Silas Creek through the property and varies in width from 240 feet on the north side along Robin Hood Road to 110 feet on the south side of the tract. The proposed reservation embraces a total area of 6 acres.

The March 10 plat was given preliminary approval by the Planning Board on 8 April, 1955. However, the petitioner, being unwilling to reserve the 6-acre tract of land along Silas Creek for the parkway,

would not agree to subdivide the property in accordance with the plan as delineated on the March 10 plat. And on 18 April, 1955, the petitioner submitted to the Planning Board a counter proposal in the form of a plat dated 14 April, 1955, hereinafter referred to as the April 14 plat. This plat does not reserve any portion of the land for the proposed Silas Creek Parkway. The 6-acre strip of land along Silas Creek, indicated on the March 10 plat as reserved for the parkway, is shown on the April 14 plat as being fully developed into lots.

The April 14 plat was disapproved by the Planning Board. The petitioner was given final notice of such disapproval by letter of the Planning Board dated 11 May, 1955.

On 8 June, 1955, the petitioner instituted this action to compel the Planning Board to approve the April 14 plat.

The petitioner alleges in gist: (1) that the counter proposal submitted to the Planning Board in the form of the April 14 plat makes provision for streets and other public ways of sufficient width and properly located to accommodate prospective traffic and composes a residential subdivision suitably coordinated with the surrounding area. (2) That the proposed Silas Creek Parkway has not been approved by the State Highway and Public Works Commission or by the Board of Aldermen of the City of Winston-Salem. (3) That when, "if ever, the proposed parkway will be developed is completely indefinite and intangible." (4) That the action of the Planning Board in declining to approve the plat of April 14, 1955, and in seeking to force the petitioner to reserve a right of way for the proposed parkway prevents subdivision and sale of the property along Silas Creek. (5) That such action on the part of the Planning Board "is arbitrary, . . . constitutes . . . usurpation of authority not granted to it under the laws of the State of North Carolina, . . . and amounts, in legal effect, to a taking of a large part of the petitioner's land for public use without compensation."

The petitioner prays relief that "the court issue its writ of *mandamus* requiring the Planning Board to approve the plat dated April 14, 1955, . . ."

The respondents filed answer admitting approval of the March 10 plat and disapproval of the April 14 plat. The respondents further allege that the subdivision plan as shown on the later plat is "in direct conflict with that portion of the City and County general development plan known as the proposed Silas Creek Parkway," which "is deemed to be an important proposed parkway in the general development plan for the City and County to accommodate prospective traffic to, from and through the area in question." The respondents further allege that the petitioner's proposed development plan as shown on the April 14 plat "fails to make reasonable provision for a street or highway of

sufficient width and suitably located to accommodate prospective traffic to, from and through the proposed development, and is not coordinated with plans for other areas so as to compose a convenient and economical system."

This action was instituted by summons and verified petition, as required in *mandamus* proceedings. G.S. 1-511. *Certiorari* was used by the petitioner for the ancillary purpose of bringing up to the Superior Court certain records of the Planning Board for use at the hearing on petitioner's application for writ of *mandamus*. Additional records and documents also were sent up by consent order of the court.

When the cause came on for hearing in the court below, the petitioner introduced in evidence various portions of, but not all, the records and documents filed with the court pursuant to the writ of *certiorari* and consent order. The petitioner's evidence includes:

1. The March 10 plat, which was approved by the Planning Board, and also the April 14 plat, which was disapproved by the Board. The only substantial difference between these plats is that the first contains a reservation for the proposed parkway along the west side of Silas Creek; whereas the latter plat makes no reservation for the parkway.

2. For the purpose of attack, the map of Forsyth County, referred to in the respondents' answer as the General Plan of Development as adopted by the Planning Board in 1948.

3. Affidavits showing (a) that streets and walkways shown on the April 14 plat constitute 15.8% of the total area of the 70-acre tract; that should the parkway reservation be added, the figure would be 24.3%; (b) that all streets as shown on the April 14 plat "will harmonize with streets in adjacent developments." (c) That Silas Creek Parkway as now proposed by the Planning Board and as shown in part on the March 10 plat, with two lanes on the west side of Silas Creek on petitioner's property and two lanes on the east side of Silas Creek on other property, "has never been located on any map, . . . general plan or special plan approved by the Board of Aldermen, the City and County Planning Board, or by any other governmental agency"; that the Silas Creek Parkway as shown on the map of the general development plan as adopted by the Planning Board "is located only by a series of dots" leading from the site of the new location of Wake Forest College to the end of Hawthorne Road Extended, where it dead-ends into the Louisville Road; that the proposed Silas Creek Parkway as shown on the general plan map is located entirely off the petitioner's land, on the opposite side of Silas Creek, and about 400 feet east of the development project at the closest point.

4. Letter written by the Planning Board to the petitioner dated 11 May, 1955, notifying the petitioner that its plat of April 14 had been

disapproved. This letter supports the inference that the Planning Board conceded that to require the petitioner to dedicate the 6-acre right of way for the parkway, in addition to the ordinary subdivisional streets in the development, would be beyond the pale of its lawful power to regulate street widths in land subdivisions wherein the divisional streets are dedicated by the developer; and that, accordingly, the Planning Board's requirement was, not that the petitioner dedicate the 6-acre right of way, but rather that it reserve the right of way until such time as some other agency of government, vested with proper power, should lay out and establish the parkway over the area reserved and pay the petitioner for such reserved area. The letter of notification gives as "the reason" for disapproval of the revised plat of April 14 that it "does not conform to the plan for the Silas Creek Parkway as shown in substance on the Winston-Salem Metropolitan Area Plan," in that "it would tend to block the ultimate construction of the west lane of the . . . Parkway." The letter closes by advising the petitioner as follows: "At such time as the citizens of Forsyth County and Winston-Salem can arouse interest in the actual construction of this parkway, the city or the state, as the case may be, will negotiate with you for the purchase of the land that you reserve for this highway. . . ."

5. Affidavit showing (a) that the Planning Board has no funds with which to construct streets or highways, and (b) that neither the Board of Aldermen of the City of Winston-Salem nor the State Highway and Public Works Commission has authorized or approved the Silas Creek Parkway, and no funds have been appropriated or are available for acquiring the right of way or for construction.

At the close of the petitioner's evidence, the respondents moved to dismiss the action. The record discloses that the "respondents offered no evidence, but contended that the court should consider all the records, documents, and maps filed by them pursuant to the writ of *certiorari*" and supplemental order.

The court found facts, made conclusions of law, and entered judgment allowing the respondents' motion and dismissing the action. The judgment recites that in making its findings and conclusions the court gave consideration not only to the evidence offered by the petitioner but also to all records, documents and maps filed with the court by the respondents.

The judgment includes findings of fact and conclusions as follows:

1. That the City and County Planning Board, pursuant to authority of law, "adopted a general development plan for Winston-Salem and Forsyth County showing the general location of proposed streets, roads, schools, parks, and other public property. This plan showed, among other things, a proposed thoroughfare following generally the course of

Silas Creek and connecting Hawthorne Road Extension with the main entrance to Wake Forest College on Reynolda Road (US Highway 421). Although this plan shows the location of the proposed thoroughfare south of Robin Hood Road to be on the east side of Silas Creek, and petitioner's property lies on the west side of said creek, this purports to be a general location only; it does not purport to show the exact or final location of the proposed thoroughfare and the right-of-way therefor. It appears from the minutes and records of the Planning Board, and arguments of counsel, that present plans for the proposed thoroughfare locate it along both sides of Silas Creek as it passes petitioner's property."

2. "On or about March 10, 1955, petitioner submitted a proposed plat of Robinhood Trails to the Planning Board. This . . . plat . . . took into account the proposed thoroughfare or parkway along Silas Creek and showed no proposed lots which would interfere with the construction of a roadway along the west side of Silas Creek. The Planning Board . . . approved this plat map on or about April 8, 1955."

3. "On or about April 18, 1955, petitioner filed with the Planning Board a revised proposed plat of the eastern portion of Robinhood Trails, dated 4-14-55, so drawn as to show the complete development into lots of the property along and adjacent to Silas Creek. . . ., that this latest proposal designed the subdivision in such a way as to put 16 building sites in the proposed Parkway right-of-way." This plat was disapproved by the Planning Board and final notice was given the petitioner on 11 May, 1955.

4. "The Planning Board, in disapproving the plat map filed by the petitioner April 18, 1955, did not act capriciously, unreasonably, arbitrarily or otherwise than in the lawful exercise of the police power conferred upon it by statute."

5. "Petitioner is not entitled to an Order of Mandamus requiring the respondents to approve the particular plat filed with the Board April 18, 1955, or to any of the relief sought in this proceeding."

From the judgment entered by the court dismissing the action, the petitioner appeals.

*Deal, Hutchins & Minor for Petitioner, appellant.*
*Womble, Carlyle, Sandridge & Rice for Respondents, appellees.*

JOHNSON, J. The petitioner in its petition does not challenge the validity or constitutionality of the enabling act under which the City and County Planning Board was established, Chapter 677, Session Laws of 1947. The cause of action alleged in the petition presupposes

a legally constituted planning board, created under a valid act of the General Assembly, with power to make discretionary decisions within the framework of the enabling act. Therefore we lay aside as not being pertinent to decision the contentions *pro* and *con*, discussed in the briefs and debated upon the argument, with reference to these questions: (1) whether the act meets minimum constitutional requirements in prescribing standards to guide the Planning Board in the exercise of the discretionary powers conferred upon it; (2) whether the Planning Board exceeded its authority in adopting rules for its guidance in regulating the subdivision of land into streets and lots; and (3) whether the enabling act exceeds constitutional limitations in prescribing penalties for failure to comply with rulings of the Planning Board. See *Motsinger v. Perryman,* 218 N.C. 15, 9 S.E. 2d 511; *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310. These questions, not having been raised by the pleadings nor ruled upon below, are beyond the scope of review here. *Merrell v. Jenkins,* 242 N.C. 636, 89 S.E. 2d 242; *Bank v. Caudle,* 239 N.C. 270, 79 S.E. 2d 723.

The petitioner by exceptions duly noted and brought forward on appeal challenges the action of the court below in considering, and in basing its findings and conclusions in part upon, records and documents not offered in evidence at the hearing. These exceptions and the assignments of error based thereon seem to be well taken. The trial court appears to have misapprehended the fundamental nature of this proceeding. The court seems to have assumed that the proceeding was one for review in its appellate capacity of action of the Planning Board on writ of *certiorari* used as a substitute for appeal. However, the proceeding was commenced and prosecuted below as an ordinary civil action wherein relief by way of *mandamus* was sought in the exercise of the court's original, as distinguished from appellate, jurisdiction. The "issuance of a writ of *mandamus* is an exercise of original and not appellate jurisdiction." *Pue v. Hood, Comr. of Banks,* 222 N.C. 310, 312, 22 S.E. 2d 896. The writ of *mandamus* is employed to compel inferior tribunals, officers, or administrative boards to perform duties imposed upon them by law. *Hospital v. Joint Committee,* 234 N.C. 673, 68 S.E. 2d 862; *Person v. Doughton,* 186 N.C. 723, 120 S.E. 481. *Mandamus* is not used to correct action, however erroneous it may be; hence it is not used to serve the purpose of a writ of error or appeal. *Pue v. Hood, Comr. of Banks, supra;* 34 Am. Jur., Mandamus, Sections 8 and 9.

The function of a writ of *certiorari* as an independent remedy is quite different from that of *mandamus. Certiorari,* as an independent remedy, is designed to review and examine into proceedings of lower tribunals and to ascertain their validity and correct errors therein. The

writ issues to review proceedings of inferior boards and tribunals which are judicial or *quasi* judicial in nature. *Pue v Hood, Comr. of Banks, supra;* 10 Am. Jur., Certiorari, Section 11, p. 535. In short, *certiorari* differs from *mandamus* in that *mandamus* compels an unperformed clear legal duty; *certiorari* reviews a performed judicial duty. 10 Am. Jur., Certiorari, Section 4. In *certiorari,* evidence *dehors* the record is not permitted in the absence of statutory authority. *Brooks v. Morgan,* 27 N.C. 481; *Pue v. Hood, Comr. of Banks, supra;* 10 Am. Jur., Certiorari, Sections 5 and 19.

*Certiorari* may be used, however, as an ancillary writ in a *mandamus* action for the purpose of bringing up from the inferior tribunal or board records deemed necessary for use in the trial of the case on its merits. 10 Am. Jur., Certiorari, Section 5, p. 529; Annotation 12 Am. Dec. 537; *S. v. Johnson,* 103 Wis. 591, 79 N.W. 1081.

In *mandamus* proceedings, the general rules governing trials of actions at law and suits in equity control, in so far as applicable, in respect to the right (1) to a hearing, (2) to present evidence, and (3) to object to rulings on questions of reception and exclusion of evidence. And where an issue of fact is raised by the pleadings, either party, by virtue of G.S. 1-513, is entitled to a jury trial. However, if neither party moves for jury trial, it then becomes incumbent upon the trial judge to find the facts and enter judgment based thereon. *Cannon v. Wiscassett Mills Co.,* 195 N.C. 119, 125, 141 S.E. 344. See also *In re Housing Authority,* 235 N.C. 463, 70 S.E. 2d 500.

Here, the action was commenced by summons and verified petition, as is expressly required by statute in *mandamus* proceedings, G.S. 1-511. *Certiorari* was used only for the ancillary purpose of bringing up from the Planning Board records and documents for use at the hearing.

At the hearing below, the petitioner offered evidence in support of its allegations bearing on the issues of fact raised by the pleadings. While some of the evidence offered by the petitioner consists of records and documents sent up by the Planning Board to the court under the ancillary writ of *certiorari,* nevertheless much of its evidence is in the form of affidavits *dehors* the records of the Planning Board and contradictory thereof. It thus appears that in the trial below the petitioner developed its case in accordance with the principles governing trial procedure in *mandamus* proceedings. The respondents offered no evidence. Therefore the court in finding the facts upon which judgment was based should have limited itself to consideration of the facts in evidence. Instead, the court appears to have given consideration to all the records, documents and maps sent up in bulk to the court by representatives of the Planning Board. Some of these documents appear to

be without semblance of authentication as reflecting official action of the Planning Board.  Also, it is noted that the court's findings appear to be based in part on "arguments of counsel."

It thus appears that the case was heard below under a misapprehension of the pertinent principles of law.  When this occurs, the usual practice with us is to remand the case for another hearing.  *Griffith v. Griffith,* 240 N.C. 271, 280, 81 S.E. 2d 918; *McGill v. Lumberton,* 215 N.C. 752, 3 S.E. 2d 324.  See also *Coley v. Dalrymple,* 225 N.C. 67, 71, 33 S.E. 2d 477; *Credit Co. v. Saunders,* 235 N.C. 369, 373, 70 S.E. 2d 176.  It is so ordered here.  Therefore, to the end that the parties may have the case heard and determined under application of the pertinent principles of law, the judgment is ordered stricken out, with direction that the cause be remanded for rehearing.

In this view of the case and since on retrial the facts may be different from those here shown, we withhold our opinion on the question whether the City and County Planning Board has legal authority to require as a condition precedent to approval of the petitioner's subdivision plan that petitioner reserve a right of way along Silas Creek as shown on the March 10 plat, when, as here, it is made to appear:  (1) that the proposed right of way will embrace a strip of land from 110 feet to 240 feet wide, comprising about six acres, for which concededly the petitioner is entitled to compensation; (2) that neither the Board of Aldermen of the City of Winston-Salem nor the State Highway and Public Works Commission has authorized or approved the proposed Silas Creek Parkway; (3) that the Planning Board has no authority under the enabling act to construct streets or highways; and (4) that no funds have been made available to any responsible governmental agency for acquiring and paying for the right of way.  Suffice it to say, on these facts the authorities relied on by the petitioner appear to be more nearly controlling than those cited by the respondents.  The cases of *Ridgefield Land Co. v. Detroit,* 241 Mich. 468, 217 N.W. 58, and *Ayers v. Los Angeles,* (Cal.) 191 P. 2d 546, and other decisions cited by the respondents seem to be distinguishable on the facts here disclosed.  See also 11 Am. Jur., Constitutional Law, Sections 260 and 266; 12 Am. Jur., Constitutional Law, Section 651; Annotation 11 A.L.R. 524; 62 C.J.S., Municipal Corporations, Section 83.

New trial.

PARKER, J., dissents.